### Town of Southampton *v.* Post.

(*Supreme Court, General Term, Second Department.* February 11, 1889.)

1. Boundaries—Adverse Possession—Prescription.

    Where land has been inclosed as a burial ground, and acquiesced in by defendant and his predecessors for more than a century, under a claim supported by a grant, and plaintiff has had such *quasi* possession as is usual in such cases, viz., the occasional exercise of the right of burial, the boundaries, as so located, cannot be questioned.

2. Same—Evidence—Description of Quantity—Town Records.

    A statement, in a town record agreeing to give a certain tract of land to a third person in consideration of a footway along his lot to the town's burial ground, that "the town have one acre at the burial place," cannot operate to limit the quantity of land actually set apart and appropriated to that use.

3. Deed—Description—Messuage—Includes What.

    A conveyance of "a messuage," described merely by metes and bounds, cannot be construed as embracing a public burial ground, so as to establish a claim of adverse possession thereto, though the conveyance does not except the burial ground. A parcel of land so used is no part of a messuage.

4. Same—Grant of Herbage—Right to Roadway.

    Use of strips of land for roadways cannot be justified under a grant of herbage.

Appeal from judgment on report of referee.

Action for trespass brought by the town of Southampton against Edwin Post. Judgment for plaintiff, and defendant appeals. The following is the opinion rendered by the referee:

"The plaintiff, in its complaint, avers its ownership of the *locus in quo*, namely, 'the old burying-ground,' substantially as the same is now surrounded by fence. The answer of the defendant, read in connection with the stipulation of the parties, dated October 6, 1887, admits the title of the plaintiff to one acre, parcel of the premises described in the complaint, but puts in issue the title of the plaintiff to the residue of said premises. The defendant also has denied the trespass alleged in the complaint. The source of the title is the colonial grant made by Gov. Dongan to the trustees of the freeholders and commonalty of the town, December 6, 1686, confirmatory of a previous patent granted by Gov. Andrus, November 1, 1676. There is no question that the *locus in quo* is embraced in these grants, and there is no direct evidence that the grantee has ever parted with the title thereto, or any part thereof, prior to this action. The plaintiff put in evidence an entry in the town records dated January 6, 1665, stating that 'the overseers have agreed with James Herrick that he shall have one acre of land at the rear of his home lot, in consideration of a footway up his lot to the burying-place, where the town have one acre for that use, and James Herrick is to have the herbage of it.' That entry antedates both the Dongan and Andrus patents many years. Yet no mention of any grant by or on behalf of the town is contained in either of those instruments. Assuming, however, that there had been, prior to the entry of January 5, 1665, a valid reservation or dedication to public use of 'the old burying-ground,' as both parties have conceded, the principal question is whether the whole of the present inclosure, or only one acre thereof, was embraced in such dedication. The plaintiff's claim is lim-

ited to, and co-extensive with, the burying-ground as now inclosed. The defendant admits the plaintiff's title to one acre within that inclosure. The northern, eastern, and southern boundaries thereof have been quite satisfactorily established, and are not seriously disputed. The real point in controversy relates to the western boundary. After a careful consideration I have come to the conclusion that the only reasonable inference from the evidence is that the western boundary of the old burying-ground is the eastern boundary of the home lots, which lay between it and the main street on the west, for the following reasons, viz.: (1) The James Herrick home lot is one of those home lots, and the footway up that home lot, mentioned in the record of January 5, 1665, extends to and ends at the burial place. That footway is wholly upon the Herrick home lot, thus showing that the eastern boundary of the Herrick home lot and the western boundary of the old burying-ground are coterminous. (2) The acre which Herrick received in exchange is in the rear of his home lot, and must necessarily have been located outside the old burying-ground. The location thereof was not conclusively proven, but I think the evidence warrants the inference that it must have been a parcel adjoining the southern boundary of the old burying-ground as now inclosed. (3) The western boundary of the old burying-ground, as thus established, has been designated in the same manner as the other boundaries thereof, viz., by a permanent fence, for a period whereof 'the memory of man runneth not to the contrary;' and it satisfactorily appears that there never has been any other designation of the western boundary thereof. These facts, I think, show an actual location of the old burying-ground along the eastern boundary of the home lots. That being so, the extension thereof eastward within the present northern and southern boundaries, so as to embrace the parcel really in dispute, would seem to be reasonably established.

"The entry in the record of 1665 does not prove that land lying eastward of the premises in dispute, and which had been devoted to a similar use, is the one acre therein referred to. On the contrary, as before stated, the acre referred to in the record is at the termination of the footway on the James Herrick home lot. The earliest burial in the eastern part of the inclosure appears to have been made in 1682. Probably there were earlier burials, but, as no memorials of them remain, it is impossible to determine in what part of the old burying-ground they were made. To hold that all of them were made in the eastern, and none of them in the western, part, would be a conclusion devoid of evidence to support it, and it cannot be presumed. Indeed there is some evidence that the old burying-ground, as now inclosed, became full of graves a century ago, and for that reason the town set apart another. Nor can the statement in the record of 1665, that 'the town have one acre at the burial place,' operate to limit the quantity of land actually devoted to that use. No doubt it is evidence on that subject, but the quantity actually set apart and appropriated to such use is better evidence. 'Actions speak louder than words.' It is a significant, if not a conclusive, fact that the *locus in quo* has, during a period extending beyond the memory of any person now living, constituted a single inclosure, and all its boundaries have been marked by permanent fences, as they now appear. By whom those fences were erected has not been, and, according to common experience, could not be, proved. But, excluding acts of the defendant to which I shall presently advert, the land inclosed has been used only for purposes of burial of the dead. That the defendant and his predecessors have until recently apparently acquiesced in such inclosure abundantly appears. These facts are sufficient to prove a practical location of the boundaries, and an acquiescence therein for more than a century. The disturbance of boundaries so established is forbidden by the law of this state. *Baldwin* v. *Brown,* 16 N. Y. 359; *Hunt* v. *Johnson,* 19 N. Y. 279. The same facts also show the possession of the plaintiff, or at least that *quasi* possession of which the right of burial that is to be occasionally exer-

cised is susceptible. Such *quasi* possession is *prima facie* evidence of property, (Best, Ev., 5th Ed. 477;) and, being supported by the grant contained in the Dongan patent, proves title in the plaintiff.

"The contention of the defendant that he has title by adverse possession cannot, I think, be sustained. The conveyance from Murray and Barnett, dated May 20, 1778, merely conveys messuage, and designates the exterior boundaries thereof. Although that conveyance contained no exception of the premises in question, yet it cannot be construed as embracing a public burying-ground, because such a parcel of land from its very nature can form no part of a messuage. Moreover, the defendant testified that his claim of title under that conveyance excludes the old burying-ground. While it is true that he claimed that the old burying-ground contains only one acre, yet his claim of title under that deed must be restricted to the actual dimensions of the old burying-ground, whatever those dimensions may be. And it is apparent from the acts of the defendant and his predecessors in title that the present area of the old burying-ground has always been treated as devoted to burial purposes. If the foregoing views are correct, there can be no doubt that some of the acts of the defendant were, in contemplation of law, trespasses on the property of the plaintiff. His use of the strips along the southern and northern boundaries of the *locus in quo* for roadways, and his traversing it with a cart, and other acts which it is not necessary to enumerate, were invasions of the right of property of the plaintiff, and were not done in the exercise of a right which he claims was conferred by the grant of herbage contained in the entry of January 5, 1665. It is not necessary, therefore, to consider the validity, nature, or effect of that grant. The principle is elementary that any willful invasion by a person of the right of property of another, however trifling and whether followed by any pecuniary damage or not, constitutes an actionable trespass. I think, therefore, that the plaintiff is entitled to judgment declaring that it has title, and is in possession of the *locus in quo*, and assessing damages sustained by reason of the trespasses alleged at six cents."

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Timothy M. Griffing*, for appellant. *Thomas Young*, for respondent.

DYKMAN, J. This is an appeal from a judgment entered upon a report of a referee in favor of the plaintiff in an action of trespass on lands. It seems to have been the object of the action to establish the title of the town to the premises in question, and although the case is involved in some obscurity, yet the title of the town seems to have been proved. The cause was tried before a referee, and he has given the case much consideration, and written an opinion which makes the case plain; and we coincide with the views expressed in the opinion and the conclusions reached by the referee. We deem it unnecessary to add anything thereto. The judgment should be affirmed, with costs. All concur.